UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ANGEL MACIAS, *individually and on behalf of others similarly situated*, | COMPLAINT |
| Plaintiff, | CASE NO.: |
| - against - | JURY TRIAL DEMANDED |
| CAPITAL MANAGEMENT AMITYVILLE, INC., CHECKERS DRIVE-IN RESTAURANTS, INC., ENRIQUE "RICK" SILVA, PETER O'HARA, and VICTORIA UMANZOR, | |
| Defendants. | |

ANGEL MACIAS (hereafter "Plaintiff"), individually and on behalf of all others similarly situated, by and through his attorneys, **ZABELL & ASSOCIATES, P.C.**, upon information and belief, and as against **CHECKERS DRIVE-IN RESTAURANTS, INC.** ("Franchisor Corporate Defendant"); **ENRIQUE "RICK" SILVA** ("Franchisor Individual Defendant" and, together with Franchisor Corporate Defendant, "Franchisor Defendants"); **CAPITAL MANAGEMENT AMITYVILLE, INC.** (d/b/a Checkers) ("Franchisee Corporate Defendant"); **PETER O'HARA**, and **VICTORIA UMANZOR** ("Franchisee Individual Defendants" and, together with Franchisee Corporate Defendants, "Franchisee Defendants") (all collectively, "Defendants") allege as follows:

## NATURE OF THE ACTION

1. Franchisee Defendants own, operate or control a fast food restaurant located at 800 Broadway, Amityville, NY 11701, operating under the trade name "Checkers".

2. Franchisee Defendants are franchised to operate Checkers restaurants under contract with the Franchisor Defendants.

3. Upon information and belief, Individual Defendant Enrique "Rick" Silva serves or served as owner, manager, principal or agent of Defendant Checkers Drive-in Restaurants, Inc., and through this corporate entity operates or operated the restaurants as a joint or unified enterprise.

4. Upon information and belief, Individual Defendants Peter O'Hara and Victoria Umanzor serve or served as owners, managers, principals or agents of Defendant Capital Management Amityville (d/b/a Checkers), and through this corporate entity operates or operated the restaurant as a joint or unified enterprise.

5. Plaintiff is a former employee of Defendants. He was employed as a food preparer.

6. At all times relevant to this Complaint, Plaintiff worked for Franchisee Defendants in excess of 40 (forty) hours per week, without being paid a premium for all hours worked above 40 (forty) per week.

7. Rather, Franchisee Defendants failed to maintain accurate recordkeeping of their hours worked, failed to pay Plaintiff appropriately for any hours worked over 40 (forty), either at the straight rate of pay, or for any additional overtime premium.

8. At all times relevant to this Complaint, Franchisee Defendants maintained a policy and practice of requiring Plaintiff and other employees to work without providing the minimum wage and overtime compensation required by federal and state law and regulations.

9. Upon information and belief, Franchisor Defendants knew or should have known of work performed by Plaintiff and similarly situated employees, and/or knew or should have known of the unlawful policies of requiring Plaintiff and other employees to work without providing the minimum wage and overtime compensation required by federal and state law and regulations; and upon information and belief, Franchisor Defendants had the power to stop the work and/or the violations, but did not do so.

2

10. Defendants' conduct extended beyond Plaintiff to all other similarly situated employees. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring Plaintiff to work without providing the minimum wage and overtime compensation required by federal and state law and regulations.

11. Plaintiff now brings this action on behalf of himself, and other similarly situated individuals, seeking recovery of unpaid minimum wages and overtime pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.* ("FLSA"), and for violations of the N.Y. Labor Law §§ 190 *et seq.* and 650 *et seq.* (the "NYLL"), including applicable liquidated damages, interest, attorneys' fees and costs.

12. Plaintiff seeks certification of this action as a collective action on behalf of himself individually and all other similarly situated employees and former employees of the Defendants pursuant to 29 U.S.C. § 216(b).

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question) and the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), and supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. § 1367(a).

14. Venue is proper in this district under 28 U.S.C. § 1391(b) and (c) because all or a substantial part of the events or omissions giving rise to the claims occurred in this district. The Franchisee Defendants maintain their corporate headquarters, offices, and restaurant within this district, and Franchisor Defendants operate several restaurants located in this district, including the restaurant owned and operated by Franchisee Defendants. Further, Plaintiff was employed by Defendants in this district.

3

## THE PARTIES

*Plaintiff*

15. Plaintiff Angel Macias ("Plaintiff Macias" or "Mr. Macias") is an adult individual residing in Suffolk County, New York.

16. Plaintiff Macias was employed by Defendants from approximately August, 2013, until on or about January, 2017.

17. Throughout his employment with Defendants, Plaintiff Macias was assigned to the Amityville, NY location, with the exception of an approximately four (4) to five (5) week period of time during the summer of 2014, when he was assigned to a Checkers location in Lindenhurst.

*Defendants*

18. Defendants own, operate, or control a chain of fast food restaurants, one of which is located at 800 Broadway, Amityville, NY 11701, operating under the trade name "Checkers".

*Franchisor Defendants*

19. Upon information and belief, Checkers Drive-in Restaurants, Inc. is a foreign corporation owning, operating, or controlling several locations located within this jurisdiction under the laws of the State of New York. Upon information and belief, Defendant Checkers Drive-in Restaurants, Inc. maintains its corporate headquarters at 4300 West Cypress St., Suite 600, Tampa, Florida 33607; its Registered Agent in the State of New York is Corporation Service Company, 80 State St., Albany, NY 12207.

20. Defendant Enrique "Rick" Silva is an individual engaging in business in this judicial district during the relevant time period. Defendant Enrique "Rick" Silva is sued individually in his capacity as an owner, officer and/or agent of Checkers Drive-in Restaurants, Inc. He possesses or possessed operational control over this Defendant Corporation, an ownership interest in this

Defendant Corporation, or controlled significant functions of this Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiff, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

21. Upon information and belief, Franchisor Defendants grant franchises to operate Checkers restaurants in New York and grant sublicenses to franchisees to use the Checkers trademarks.

22. At relevant times, and as a matter of economic reality, Franchisor Defendants were Plaintiff's employers within the meaning of the FLSA and the NYLL, and Franchisor Defendants employed and/or jointly employed Plaintiff and similarly situated employees within the meaning of the FLSA and NYLL.

23. Facts which demonstrate that Franchisor Defendants were Plaintiffs' employers include, but are not limited to, the following:

    a. Defendants all suffered or permitted Plaintiff and similarly situated employees to work;

    b. Each of the Defendants acted directly or indirectly in the interest of one another in relation to Plaintiff and similarly situated employees;

    c. Defendants each have an economic interest in the Checkers locations in which Plaintiff and similarly situated employees work;

    d. Defendants all simultaneously benefitted from Plaintiffs' work;

    e. Defendants each had either functional and/or formal control over terms and conditions of work of Plaintiff and similarly situated employees; and,

    f. Plaintiffs and similarly situated employees performed work integral to each Defendant's operation.

### *Franchisee Defendants*

24. Upon information and belief, Defendant Capital Management Amityville, Inc. (d/b/a Checkers) is a domestic corporation organized and existing under the laws of the State of New York. Upon information and belief, Defendant Capital Management Amityville, Inc. maintains its place of business at 800 Broadway, Amityville, NY, 11701, and its corporate headquarters at 80 Orville Drive, Bohemia, NY, 11716.

25. Defendant Peter O'Hara is an individual engaging in business in this judicial district during the relevant time period. Defendant Peter O'Hara is sued individually in his capacity as an owner, officer and/or agent of Capital Management Amityville, Inc. He possesses or possessed operational control over this Defendant Corporation, an ownership interest in this Defendant Corporation, or controlled significant functions of this Defendant Corporation. He determined the wages and compensation of the employees of Defendants, including Plaintiff, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

26. Defendant Victoria Umanzor is an individual engaging in business in this judicial district during the relevant time period. Defendant Victoria Umanzor is sued individually in her capacity as an owner, officer and/or agent of Capital Management Amityville, Inc. She possesses or possessed operational control over this Defendant Corporation, an ownership interest in this Defendant Corporation, or controlled significant functions of this Defendant Corporation. She determined the wages and compensation of the employees of Defendants, including Plaintiff, and established the schedules of the employees, maintained employee records, and had the authority to hire and fire employees.

# FACTUAL ALLEGATIONS

*Defendants Constitute Joint Employers*

27. Defendants own, operate, or control a chain of fast food restaurants which are located at various nationwide locations, including several in Long Island and in this judicial district.

28. Individual Defendant Enrique "Rick" Silva possesses or possessed operational control over Defendant Franchisor Corporation, possesses or possessed an ownership interest in Defendant Franchisor Corporation, and controls or controlled significant functions of Defendant Franchisor Corporation.

29. Individual Defendants Peter O'Hara and Victoria Umanzor possessed or possess operational control over Defendant Capital Management Amityville, Inc., possessed or possess an ownership interest in this Defendant Corporation, and control significant functions of this Defendant Corporation.

30. Defendants possess or possessed substantial control over Plaintiff's (and other similarly situated employees') working conditions, and over the policies and practices with respect to the employment and compensation of Plaintiff, and all similarly situated individuals, referred to herein.

31. Defendants employ or employed Plaintiff, and all similarly situated individuals, and are or were Plaintiff's (and all similarly situated individuals') employers within the meaning of 29 U.S.C. 201 *et seq.* and the NYLL.

32. Upon information and belief, Individual Defendants operate Defendant Corporations as either alter egos of themselves, and/or failed to operate Defendant Corporations as entities legally separate and apart from themselves by, among other things:

a. failing to adhere to the corporate requirements necessary to operate Defendant Corporations as corporations;

b. defectively forming or maintaining Defendant Corporations by, amongst other things, failing to hold annual meetings or maintaining appropriate corporate records;

c. transferring assets and debts freely as between all Defendants;

d. operating Defendant Corporations for their own benefit as the sole or majority shareholders;

e. operating Defendant Corporations for their own benefit and maintaining control over these corporations as closed corporations;

f. intermingling assets and debts of their own with Defendant Corporations and diminishing and/or transferring assets to avoid full liability as necessary to protect their own interests; and,

g. Other actions evincing a failure to adhere to the corporate form.

33. At all relevant times, Franchisee Defendants were each Plaintiff's employers within the meaning of the FLSA and New York Labor Law. Franchisee Defendants had the power to hire and fire Plaintiff, controlled the terms and conditions of employment, and determined the rate and method of any compensation in exchange for Plaintiff's services.

34. Upon information and belief, Franchisor Defendants run a fast food business dependent on its franchise, and corporate-owned store, selling and delivering food based on a prescribed mode. As such, upon information and belief, Plaintiff's work as employees who perform duties within this model is integral to Franchisor Defendants' operations.

35. Upon information and belief, Franchisor Defendants coordinate certain business functions for all stores, corporate and franchise owned.

8

36. For example, as per http://checkersfranchising.com/why_checkers_rallys and http://checkersfranchising.com/steps_to_ownership, franchisees attend a five (5) week training program formulated by Franchisor Defendants, and will "benefit from this brand history and be instantly connected to our comprehensive support structure and one of the industry's most unparalleled operating systems."

37. Upon information and belief, Franchisor Defendants have maintained control over many aspects of Franchisee Defendants' operations. For example, upon information and belief, Checkers restaurants must conform to six standard layout requirements. In addition, upon information and belief, Franchisor Defendants guide Franchisees on how to hire and train employees, as well as provide materials and training regarding giving directions to employees as to how to perform their jobs. Further, Franchisees are provided with "A field-based franchise business team assigned to support each franchisee in their respective markets" by Franchisor Defendants, in addition to Franchisor provided "Training managers, field marketing managers and operational support professionals."

38. Based upon Franchisor Defendants' website, "It is extremely important to not only our franchisees, but also our executive team, to operate as one brand."

39. Upon information and belief, through its franchise agreement and in other ways, Franchisor Defendants set requirements for the operation of Franchise Defendants and enforced those requirements, in particular, requirements related to the work of Plaintiff and similarly situated employees. The requirements include, but are not limited to, setting Checkers delivery areas, monitoring employee performance, specifying equipment, uniforms, and supplies for the use of Plaintiff and other similarly situated employees, and specifying the methods and procedures Plaintiff and other similarly situated employees use in preparing customer orders.

9

40. Upon information and belief, through these requirements, Franchisor Defendants possessed and exercised the authority to control, directly or indirectly, the work of Plaintiff and all similarly situated employees.

41. Upon information and belief, the Franchisor Defendants possessed and exercised the authority to require that Franchisee Defendants employ recordkeeping of the operation of Franchisee Defendants, including systems for tracking hours and wages and for retaining payroll records.

42. Upon information and belief, these recordkeeping systems required by Franchisor Defendants were an instrument through which unlawful policies, patterns, and/or practices in this case were implemented.

43. Upon information and belief, Franchisor Defendants had the right to inspect the facilities and operations of Franchisee Defendants.

44. Upon information and belief, Franchisor Defendants had the right to audit all Franchisee records.

45. Upon information and belief, Franchisor Defendants had the authority to control, directly or indirectly, the timekeeping and payroll practices of Franchisee Defendants.

46. Upon information and belief, Franchisor Defendants knew or should have known of, and had the authority to exercise control over, the accuracy of records concerning the hours and wages of Plaintiff and similarly situated employees through the monitoring of Franchisees.

47. Franchisor Defendants could have terminated the franchise agreements of Franchisee Defendants and caused Franchisee Defendants to cease operation of the franchise restaurants under certain circumstances, including in the event of violations of the law. Thus, upon information and belief, Franchisor Defendants have had the authority to stop violations of the labor law and, ultimately, to control the employment of Plaintiff and similarly situated

employees, including, but not limited, causing the termination of their employment. Moreover, Franchisor Defendants have had the power to induce compliance with applicable wage and hour laws by threatening to terminate a franchise agreement.

48. In each year from 2013 to the present, Defendants, both separately and jointly, had a gross annual volume of sales of not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).

49. In addition, upon information and belief, Defendants and/or their enterprises were directly engaged in interstate commerce. As an example, numerous items that were used in the restaurant on a daily basis were goods produced outside of the State of New York.

*Individual Plaintiff*

50. Plaintiff is a former employee of the Defendants who was employed as a cook and food preparer.

51. Plaintiff seeks to represent a class of similarly situated individuals under 29 U.S.C. 216(b).

52. Plaintiff was employed by the Defendants from approximately August, 2013, until in or about January, 2017.

53. Throughout his employment with Defendants, Plaintiff was assigned to the Amityville, NY Checkers location, with the exception of an approximately four (4) to five (5) week period of time during the summer of 2014, when he was assigned to a Checkers location in Lindenhurst.

54. Plaintiff regularly handled goods in interstate commerce, such as cleaning fluids and other supplies produced outside the State of New York, and food products produced outside the State of New York.

55. Plaintiff's work duties require neither discretion, nor independent judgment.

11

56. Throughout his employment with Defendants, Plaintiff regularly worked in excess of 40 hours per week.

57. From approximately August, 2013 until January, 2017, Plaintiff worked from approximately 6:00 p.m. until 4:00 a.m. the following morning, six days a week (typically 60 (sixty) hours per week).

58. Throughout his employment with the Defendants, Plaintiff was paid his wages *via* check.

59. Throughout his employment with defendants, Plaintiff was paid an hourly wage. When Plaintiff commenced employment with Defendants, he was paid $8.75 (eight dollars and seventy-five cents) per hour. On or around January, 2016, his hourly rate increased to $9.75 (nine dollars and seventy-five cents) per hour. On or around January, 2017, his hourly rate increased to $10.75 (ten dollars and seventy-five cents) per hour.

60. Defendants did not provide Plaintiff Macias with an accurate statement of wages, specifically, failing to enumerate accurate straight time and overtime hours worked, with each payment of wages, as required by NYLL 195(3).

61. At no point during Plaintiff's employment with Defendants was he properly compensated for his true number of hours worked, nor was he at any time provided with accurate pay stubs reflecting his true number of hours worked.

62. Plaintiff was frequently compensated for hours significantly below not only his true hours worked, but also below 40 (forty) hours. This discrepancy resulted in Plaintiff's effective rate of pay being below minimum wage during such workweeks.

63. Defendants did not give Plaintiff Macias any notice in Spanish (Plaintiff Macias's primary language) of his rate of pay, employer's regular pay day, and such other information as required

by NYLL §195(1); nor did Defendants require Plaintiff Macias to sign and date a written acknowledgment, as required by NYLL §195(1).

*Defendants' General Employment Practices*

64. At all times relevant to this Complaint, Defendants maintained a policy and practice of requiring the Plaintiff and all similarly situated employees to work in excess of forty (40) hours per week without paying them appropriate minimum wage and/or overtime compensation as required by federal and state laws.

65. Defendants have engaged in its unlawful conduct pursuant to a corporate policy of minimizing labor costs and denying employees compensation by knowingly violating the FLSA and NYLL.

66. Defendants' unlawful conduct was intentional, willful, in bad faith, and caused significant damages to Plaintiff and other similarly situated current and former employees.

67. Defendants' pay practices resulted in Plaintiff not receiving payment for all his hours worked, resulting in Plaintiff's effective rate of pay falling below the required minimum wage rate.

68. Defendants willfully disregarded and purposefully evaded recordkeeping requirements of the Fair Labor Standards Act and New York Labor Law by failing to maintain accurate and complete timesheets and payroll records.

69. Defendants did not provide Plaintiffs with statutorily required accurate wage and hour records or accurate statements of their pay received, taking advantage of Plaintiffs' lack of sophistication in wage and hour laws and difficulty with English.

70. Upon information and belief, Defendants practices were done willfully to avoid paying Plaintiff (and similarly situated individuals) properly for their full hours worked.

71. Defendants failed to provide Plaintiff and other employees with wage statements at the time of payment of wages, containing: the dates of work covered by that payment of wages; name of employee; name of employer; address and phone number of employer; rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; gross wages; deductions; allowances, if any, claimed as part of the minimum wage; net wages; the regular hourly rate or rates of pay; the overtime rate or rates of pay; the number of regular hours worked; and the number of overtime hours worked, as required by NYLL §195(3).

72. Defendants failed to obtain from Plaintiff and other employees, at the time of hiring and on or before February 1 of each subsequent year, "a signed and dated written acknowledgement, in English and in the primary language of the employee, of receipt of this notice" establishing Plaintiff received a statement in English and the employees' primary language, containing: the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances; the regular pay day designated by the employer; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; and the telephone number of the employer, as required by New York Labor Law §195(1).

## FLSA COLLECTIVE ACTION CLAIMS

73. Plaintiff brings his FLSA minimum wage, overtime, and liquidated damages claims as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all similarly situated persons who are or were employed by Defendants or any of them, on or after the date that is three years before the filing of the Complaint in this case (the "FLSA Class Period"), as employees of Defendants (the "FLSA Class").

74. At all relevant times, Plaintiff, and other members of the FLSA Class who are and/or have been similarly situated, have had substantially similar job requirements and pay provisions, and have been subject to Defendants' common practices, policies, programs, procedures, protocols and plans of willfully failing and refusing to pay them at the proper wage rate and willfully failing to keep accurate records as required by the FLSA.

75. The claims of Plaintiffs stated herein are similar to those of the other employees.

## FIRST CAUSE OF ACTION
## (VIOLATION OF THE MINIMUM WAGE PROVISIONS OF THE FLSA)

76. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

77. At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d). Defendants had the power to hire and fire Plaintiff, control the terms and conditions of employment, and determine the rate and method of any compensation in exchange for his employment.

78. At all times relevant to this action, Defendants were engaged in commerce or in an industry or activity affecting commerce.

79. Defendants constitute an enterprise within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203 (r-s).

80. Defendants failed to pay Plaintiff at the applicable minimum hourly rate, in violation of 29 U.S.C. § 206(a).

81. Defendants' failure to pay Plaintiff at the applicable minimum hourly rate was willful within the meaning of 29 U.S.C. § 255(a).

82. Plaintiffs have been damaged in an amount to be determined at trial.

## SECOND CAUSE OF ACTION
## (VIOLATION OF THE OVERTIME PROVISIONS OF THE FLSA)

83. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

84. Defendants, in violation of the FLSA, failed to pay Plaintiff and the FLSA class members overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek, in violation of 29 U.S.C. § 207(a)(1).

85. Defendants' failure to pay Plaintiff and the FLSA Class members overtime compensation was willful within the meaning of 29 U.S.C. § 255(a).

86. Plaintiff and the FLSA class members have been damaged in an amount to be determined at trial.

## THIRD CAUSE OF ACTION
## (VIOLATION OF THE NEW YORK MINIMUM WAGE ACT)

87. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

88. At all times relevant to this action, Defendants were Plaintiff's employers within the meaning of the N.Y. Lab. Law §§ 2 and 651. Defendants had the power to hire and fire Plaintiff, control his terms and conditions of employment, and determine the rates and methods of any compensation in exchange for his employment.

89. Defendants, in violation of the NYLL, paid Plaintiff less than the minimum wage in violation of NYLL § 652(1) and the supporting regulations of the New York State Department of Labor.

90. Defendants' failure to pay Plaintiff the minimum wage was willful within the meaning of N.Y. Lab. Law § 663.

91. Plaintiff has been damaged in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION
## (VIOLATION OF THE OVERTIME
## PROVISIONS OF THE NEW YORK LABOR LAW)

92. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

93. Defendants, in violation of the NYLL Art. 19 and 12 N.Y.C.R.R. § 142-2.2, failed to pay Plaintiff overtime compensation at rates of one and one-half times the regular rate of pay for each hour worked in excess of forty hours in a workweek.

94. Defendants' failure to pay Plaintiff overtime compensation was willful within the meaning of NYLL § 663.

95. Plaintiff has been damaged in an amount to be determined at trial.

## SIXTH CAUSE OF ACTION
## (VIOLATION OF THE NOTICE AND RECORDKEEPING
## REQUIREMENTS OF THE NEW YORK LABOR LAW)

96. Plaintiff repeats and re-alleges all paragraphs above as though fully set forth herein.

97. Defendants failed to failed to obtain from Plaintiff, at the time of hiring and on or before February 1 of each subsequent year, "a signed and dated written acknowledgement, in English and in the primary language of the employee" establishing Plaintiff received a NYLL § 195(1) statement in English and the employees' primary language, in violation of NYLL § 195(1).

98. Defendants are liable to Plaintiff in the amount of $2,500, together with costs and attorneys' fees.

## SEVENTH CAUSE OF ACTION
## (VIOLATION OF THE WAGE STATEMENT PROVISIONS
## OF THE NEW YORK LABOR LAW)

99. Plaintiffs repeat and reallege all paragraphs above as though set forth fully herein.

100. Defendants did not provide Plaintiffs with wage statements upon each payment of wages, as required by NYLL 195(3).

101. Defendants are liable to each Plaintiff in the amount of $2,500, together with costs and attorneys' fees.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff respectfully request that this Court enter judgment against Defendants:

(a) Designating this action as a collective action and authorizing prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all putative class members, apprising them of the pendency of this action, and permitting them promptly to file consents to be Plaintiffs in the FLSA claims in this action;

(b) Declaring that Defendants have violated the minimum wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff (including the prospective collective class members);

(c) Declaring that Defendants have violated the overtime wage provisions of, and associated rules and regulations under, the FLSA as to Plaintiff (including the prospective collective class members);

(d) Declaring that the Defendants have violated the recordkeeping requirements of, and associated rules and regulations under, the FLSA with respect to Plaintiff's (and the

prospective collective class members') compensation, hours, wages, and any deductions or credits taken against wages;

(e) Declaring that Defendants' violation of the provisions of the FLSA were willful as to Plaintiff (including the prospective collective class members);

(f) Awarding Plaintiff (including the prospective collective class members) damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable;

(g) Awarding Plaintiff (including the prospective collective class members) liquidated damages in an amount equal to 100% of their damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the FLSA as applicable pursuant to 29 U.S.C. § 216(b);

(h) Declaring that Defendants have violated the minimum wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff;

(i) Declaring that Defendants have violated the overtime wage provisions of, and rules and orders promulgated under, the NYLL as to Plaintiff;

(j) Declaring that the Defendants have violated the notice and recordkeeping requirements of the NYLL with respect to Plaintiff's compensation, hours, wages; and any deductions or credits taken against wages;

(k) Declaring that Defendants' violations of the New York Labor Law were willful as to Plaintiff;

(l) Awarding Plaintiff damages for the amount of unpaid minimum and overtime wages, and damages for any improper deductions or credits taken against wages under the NYLL, as applicable;

(m) Awarding Plaintiff damages for Defendants' violation of the NYLL notice and recordkeeping provisions, pursuant to NYLL §§198(1-b), 198(1-d);

(n) Awarding Plaintiffs liquidated damages in an amount equal to one hundred percent (100%) of the total amount of minimum wage and overtime compensation shown to be owed pursuant to NYLL § 663 as applicable; and liquidated damages pursuant to NYLL § 198(3);

(o) Awarding Plaintiff (including the prospective collective class members) prejudgment and post-judgment interest as applicable;

(p) Awarding Plaintiff (including the prospective collective class members) the expenses incurred in this action, including costs and attorney's fees;

(q) Providing that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent, as required by NYLL § 198(4); and

(r) All such other and further relief as the Court deems just and proper.

Dated: Bohemia, New York
April 11, 2017

ZABELL & ASSOCIATES, P.C.
*Attorneys for Plaintiff*

By: _____

Saul D. Zabell, Esq.
Daniel A. Johnston, Esq.
ZABELL & ASSOCIATES, P.C.
1 Corporate Drive, Suite 103
Bohemia, NY 11716
Tel. (631) 589-7242
Fax (631) 563-7475
SZabell@laborlawsny.com